UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

STEVEN C. ATKINS,

    Plaintiff,

v.

COUNTY OF ALAMEDA, CITY OF ALAMEDA, OFFICER P. WYETH, EILEEN MCANDREW, and DOES 1–10,

    Defendants.

No. C-03-3566 MHP

**MEMORANDUM AND ORDER**
**Re: Cross-Motions for Summary Judgment**

/

    On July 31, 2003, plaintiff Steven C. Atkins, proceeding *pro se*, brought this civil action against defendants the County of Alameda, City of Alameda, Eileen McAndrew, and Officer Patrick Wyeth of the Alameda Police Department (collectively the "defendants"). Atkins' complaint alleges that defendants participated—individually and collectively—in the false arrest, illegal search, false imprisonment and malicious prosecution of plaintiff; in the process, plaintiff claims, defendants violated the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution. For these supposed violations, plaintiff seeks unspecified sums of compensatory and punitive damages, and he requests an award of costs and attorneys' fees. See 42 U.S.C. § 1983.

    On March 8, 2004, the court granted defendants' motion to stay this action pursuant to the Soldiers' and Sailors' Civil Relief Act, see 50 U.S.C. §§ 501, et seq., though the court expressly permitted two defendants (viz., McAndrew and the County of Alameda) to file summary judgment motions. On April 29, 2004, the court granted McAndrew and the County of Alameda's motion for summary judgment—dismissing the malicious prosecution claims against them. Now before the court are cross-motions for summary judgment filed by the plaintiff and by the remaining defendants (viz., Wyeth and the City of Alameda). Having considered the parties' arguments fully, and for the reasons set forth below, the court rules as follows.

BACKGROUND[1]

On November 20, 2002, Stephanie Atkins (who was seventeen years of age at the time) telephoned the Alameda Police Department ("APD") to report that her father, plaintiff Steven Atkins, had been drinking heavily and had left home in his car. In a recording of the 911 call she made, Stephanie stated: "My dad just left the house and he's completely plastered and I have his license plate number and I would really like you guys to pick him up." Fox Dec., Exh. E (hereinafter, the "911 Tape"). Speaking with an APD emergency operator, Stephanie described the make and license number of plaintiff's car—a Jeep Cherokee—adding that she believed plaintiff was planning to purchase more alcohol. APD dispatched Officer Wyeth to respond to Stephanie's call. According to dispatch, plaintiff "left after an argument but no weapons involved. [Plaintiff] . . . has been drinking heavily and is on medication for his alcoholism and should be highly intoxicated." JSUF ¶ 6. Officer Wyeth could not locate plaintiff (or plaintiff's vehicle) in the areas surrounding plaintiff's home, most notably at any of the neighborhood's liquor stores. Fox Dec., Exh. D (hereinafter "Police Report") at 4. Still needing to verify Stephanie's report, Officer Wyeth drove to the Atkins' home. Id. Once there, Officer Wyeth spotted a vehicle matching Stephanie's description in the driveway of plaintiff's home. The vehicle's headlights were on; its engine block was warm; and it had been parked such that its bumper was pressed against the garage door. Id.

Wearing a micro-cassette recorder, Officer Wyeth approached plaintiff's front door. Plaintiff responded to the doorbell and a tense conversation followed. Plaintiff admits that he was "probably belligerent" and that he raised his voice and used expletives during this conversation. JSUF ¶ 8. Officer Wyeth could smell the odor of an alcoholic beverage coming from plaintiff's person. Police Report at 4. Plaintiff's eyes were red and watery and he could not stand straight but swayed as he stood at the door. Id. During the course of the conversation, Wyeth informed plaintiff that his daughter Stephanie had called 911. According to Wyeth, plaintiff's already hostile behavior intensified when he was informed that Stephanie had called the police. Id. At his deposition, plaintiff testified that he believed that Officer Wyeth's purpose, in informing him that Stephanie had made the 911 call, was to make him angry. In any event, Officer Wyeth requested that he be allowed to enter the house and speak with Stephanie. Even though plaintiff understood that Wyeth

1  wanted to speak to Stephanie, he told the officer that he could not come in. Id. at 89:24–90:19.
2  Plaintiff did not ask Stephanie to come to the door and speak with the police officer. Atkins Dep. at
3  90:20–24. During this entire exchange, Stephanie and her mother, Sheila, were in the kitchen.
4  Stephanie Atkins Dep. at 20:2–5; Atkins Dep. at 10:17–20. Officer Wyeth testified that he saw
5  some movement and could hear some sounds coming from the kitchen area. Wyeth Dep. at 11:4–5.
6  Officer Wyeth also testified that he found it "strange" that Stephanie did not come to the door.
7  Police Report at 4.

8        Ultimately, without plaintiff's permission, Officer Wyeth entered the home through a screen
9  door. Before Officer Wyeth entered the house, he felt that he had "exhausted all of [his[ resources
10 and that Stephanie could have had her safety compromised, and [plaintiff] was delaying [him] from
11 gathering further information about the 911 call." Wyeth Dep. at 14:4–9. When he entered the
12 house, Officer Wyeth approached the women in the kitchen and Stephanie confirmed that she had
13 placed the call to APD. An extensive exchange involving Officer Wyeth, plaintiff, Stephanie, and
14 plaintiff's wife, Sheila, followed. Fox Dec., Exh. F (hereinafter "Micro Cassette Recording").
15 Sheila told the officer that plaintiff had been drinking consistently that evening. She informed
16 Wyeth that plaintiff was taking prescription medication (Lorazepum, also known as Ativan) to help
17 curb his drinking habits. Id. at 1. In her citizen arrest statement, Sheila explained that the
18 prescription medication is an anti-depressant and that in less than one week plaintiff had already
19 consumed 35 of his 60 pills. Police Report at 5,7; Micro Cassette Recording at 5. Plaintiff
20 confirmed that he was prescribed Ativan for his alcoholism. Atkins Dep. at 39:8–12.[2]

21       The following events had transpired before Wyeth's arrival: Plaintiff had already consumed
22 two, and possibly four, Ativan tablets before arriving home from work on the evening of November
23 20, 2002. Id. at 59:2–8. Soon after arriving home, plaintiff went with his wife to Lucky 13 Bar
24 where he consumed a double vodka and orange juice. After leaving Lucky 13 Bar, plaintiff
25 purchased another bottle of vodka and when he reached home he drank another beverage containing
26 "half the bottle' of vodka. Not long after, plaintiff consumed the remaining vodka and took at least
27 one other Ativan tablet. Id. 57:18–59:11; 60:23–62:18; 63:6–68:13; Police Report at 5. Plaintiff
28 concedes that combining his medication with alcohol constituted "bad judgment." Atkins Dep. at

UNITED STATES DISTRICT COURT
For the Northern District of California

3

68:11–13. After having already consumed a full bottle of vodka, plaintiff informed his wife that he was going out to purchase more alcohol. Sheila warned plaintiff, stating that "[i]f you go out in the car, I am going to call the police." Police Report at 8. Plaintiff left and returned a few minutes later with another bottle of vodka.

After Sheila and Stephanie relayed the above events, Wyeth informed the women that if they saw plaintiff drinking before he got into the car that would provide sufficient basis to arrest him. Micro Cassette Recording at 1. Wyeth admits that *he* did not have any probable cause to make an arrest. Wyeth Dep. at 12:11–13; 13:7–12. Wyeth told Sheila and Stephanie that the only way that plaintiff could be arrested is if they put him under citizens arrest. Atkins Dep. at 127:4– 9. Wyeth then asked the women: "Do you want to go ahead and have him arrested?" and both women answered in the affirmative. Id. at 2; Sheila Atkins Dep. at 26:24–27:5; Atkins Dep. at 128:8–13. Officer Wyeth then placed plaintiff under arrest, handcuffed him and transported him to the APD jail, where plaintiff spent approximately four hours in a detoxification cell. Sheila and Stephanie both filled out and signed citizen arrest statements.[3] See Police Report at 7–9. That same night, fearing that plaintiff would return or harm her or her daughter Sheila requested an emergency protective order ("EPO"). Police Report at 6. Sheila's EPO request (included in the police report) states that "Sheila placed Steven under citizens arrest for DUI." See id. at 10. At 12:35 a.m., after being cited and after signing a promise to appear, plaintiff was released.

Within two weeks, the district attorney of Alameda County (Eileen McAndrew) filed charges against plaintiff for driving under the influence and refusing to take a chemical test. See Cal Veh. Code §§ 23152(a), 23577. After learning that neither Sheila nor Stephanie wished to proceed with the prosecution and that neither wanted to testify against plaintiff, the district attorney dismissed the criminal action on the same day; plaintiff was immediately notified. The criminal complaint that was filed pursuant to section 740 of the California Penal Code was signed by Officer Al Cofer and not by Sheila Atkins. Al Cofer Dep. at 4:15–18;5:1–6:11.

Approximately six months after the dismissal of his case, plaintiff filed a complaint in this court, alleging numerous civil rights violations for the allegedly unlawful warrantless entry of Officer Wyeth into his home and his subsequent arrest for DUI.

4

LEGAL STANDARD

Summary judgment is proper when the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id. The party moving for summary judgment bears the burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986). On an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." Id.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Mere allegations or denials do not defeat a moving party's allegations. Id.; Gasaway v. Northwestern Mut. Life Ins. Co., 26 F.3d 957, 960 (9th Cir. 1994). The court may not make credibility determinations, and inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the motion. Masson v. New Yorker Magazine, 501 U.S. 496, 520 (1991); Anderson, 477 U.S. at 249.

The moving party may "move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof." Fed. R. Civ. P. 56(a). "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e).

DISCUSSION

I.   Officer Wyeth's Warrantless Entry was Lawful

Defendants contend that the emergency aid exception to the Fourth Amendment's warrant requirement is applicable in the instant action. Thus, they assert that they are entitled to summary

5

judgment that Officer Wyeths' warrantless entry into the Atkins' home was lawful. Plaintiff disputes this, asserting in his summary judgment motion that Officer Wyeth's warrantless entry was a violation of his Fourth Amendment rights. In general the Fourth Amendment bars a warrantless search of or entry into a residence unless (1) there is probable cause and (2) exigent circumstances are present. United States v. Cervantes, 219 F.3d 882, 887 (9th Cir. 2000). However, "numerous state and federal cases have recognized that the Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid." Mincey v. State of Arizona, 437 U.S. 385, 392 (1978).

The Ninth Circuit adopted this exception in Cervantes (a case involving the warrantless entry of police officers into an apartment after they observed fumes and smelled what they feared to be inflammable material), noting that "[t]he need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency." 219 F.3d at 888. The Ninth Circuit found that this duty on the part of the police to "protect[] against [the] serious bodily injury" of public citizens stems from their "community caretaking function." Id. at 889. Further, in United States v. Martinez, 406 F.3d 1160 (9th Cir. 2005) (citing Tierney v. Davidson, 133 F.3d 189, 196 (2d Cir. 1998)), the Ninth Circuit noted that "courts have recognized the combustible nature of domestic disputes and have accorded great latitude to an officer's belief that warrantless entry was justified."

Under this emergency aid exception, so long as (1) the police have reasonable grounds to suspect that there is an emergency, (2) the primary motive of the search is not to find evidence, and (3) there is "some reasonable basis, approximating probable cause, to associate the emergency with the area or place to be searched," then the search is valid. Cervantes, 219 F.3d at 889; see also Martin v. City of Oceanside, 205 F. Supp. 2d 1142 (S.D. Cal. 2002), aff'd, 360 F.3d 1078 (2000), cert denied., __U.S.__, 128 S. Ct. 55 (2004) (holding that warrantless entry and search of home following request by a father who feared for the safety of his daughter and after there was no response to heavy knocking on the front door met all the requirements of the emergency aid exception); Johnson v. City of Bellevue, No. 05-1070 C, 2006 WL 223797 (W.D. Wash. Jan. 30, 2006) (finding that police had reasonable grounds to believe that plaintiff might commit suicide and thus emergency aid exception was applicable). In determining the applicability of this emergency aid exception, the Supreme Court has "repeatedly rejected" a subjective intent approach. Brigham City v. Stuart, et al., __ U.S. __, 2006 WL 1374566 (May 22, 2006). "An action is 'reasonable'

1  under the Fourth Amendment, regardless of the individual officer's state of mind, 'as long a the
2  circumstances, *viewed objectively*, justify [the] action.'" Id. at *4 (citing Scott v. United States, 436
3  U.S. 128, 138 (1978))

4        In his response to defendants' motion (and in his own summary judgment motion), plaintiff
5  makes no attempt to apply the applicable law to the undisputed facts.  However, it appears that
6  plaintiff's contention is that Officer Wyeth's conduct cannot meet the second prong of the
7  emergency aid exception—specifically that his warrantless entry was not primarily motivated by a
8  concern for the welfare of Stephanie.  Plaintiff asserts that Wyeth entered the Atkins home not only
9  to check on Stephanie but also to further investigate the 911 DUI call.  This argument—that
10 somehow Officer Wyeth's expressed motivation was pretextual— is unpersuasive and unsupported.
11 It is true that Officer Wyeth stated that he believed that plaintiff, by refusing to let him speak with
12 Stephanie was "delaying the welfare check of the caller, the 911 call . . . and also possibly
13 investigation of the DUI, that was driving under the influence that was reported to the police."
14 Wyeth Dep. at 13–16.  However, this suspicion on the part of Officer Wyeth about the intentions of
15 plaintiff does not dispel what, as discussed below, was a reasonable concern about the welfare of
16 Stephanie.   The only other evidence in the record that plaintiff points to in support of his contention
17 that Officer Wyeth's warrantless entry was motivated by either an attempt to arrest or to gather
   evidence against him is the un-compelling fact that the first question that the officer asked was:
   "Why did you call 911?"  In fact, the weight of the evidence supports the opposite conclusion.

18       More importantly, as discussed above, the Supreme Court has expressly rejected a similar
19 argument by respondents in the recently decided Brigham case, noting that the subjective intent of
20 the particular officer is irrelevant in determining the "reasonableness" of his or her actions.  It is
21 clear from the facts of this case that Officer Wyeth's actions are objectively reasonable and fall
22 squarely within the ambit of the emergency aid exception.  The undisputed facts are: (1) Wyeth was
23 informed that there had been an argument among members of the Atkins household prior to the 911
24 call, (2) he was greeted at the door by an intoxicated and belligerent individual who became
25 increasingly hostile after discovering that it was his daughter who had called the police, (3) this
26 individual flatly refused to allow the officer to speak to his daughter, and (4) Stephanie did not come
27 to the door after the doorbell rang or throughout the entire loud exchange between Wyeth and
   plaintiff.  Under these circumstances, Officer Wyeth reasonably suspected that an emergency was at
28 hand and that Stephanie was in danger or may have already been harmed.  Additionally, Officer

1  Wyeth testifies that throughout his confrontation with plaintiff, his concern was heightened by the
2  fact that plaintiff repeatedly glanced nervously in the direction of the kitchen, where the women
3  were located. As Wyeth stated in his deposition, "I could not leave in good conscience . . . walk
4  away from that house and not make sure that she was okay." Wyeth Dep. at 41:17–18.
5  Accordingly, this court finds that it was reasonable and lawful, under the emergency aid exception,
6  for Officer Wyeth to enter the Atkins household without a warrant. Defendants are entitled to
   summary judgment with respect to the lawfulness of the warrantless entry.
7
8        Plaintiff's motion, aside from conclusory statements regarding Officer Wyeth's motivations,
   cites to no evidence in the record to support his claim that the warrantless entry was unlawful—aside
9  from Wyeth's statement regarding plaintiff's intentions. Plaintiff has failed to meet his initial
10 burden of demonstrating that there is no genuine issue of material fact and that he is entitled to
11 summary judgment as a matter of law. See Celotex, 477 U.S. at 323.

12
13 II.     Citizen's Arrest of Plaintiff was Lawful
          Pursuant to the California Penal Code section 837,
14
15       a private person may arrest another (1) for a public offense committed or attempted in his
         presence, (2) when the person arrested has committed a felony, although not in his presence,
16       (3) when a felony has been in fact committed and he has reasonable cause for believing the
         person arrested to have committed it.

17 Cal. Penal Code § 837. In Padilla v. Meese, 184 Cal. App. 3d 1022, 1030 (1986), the California
18 Court of Appeal found that under section 837, a citizen "may lawfully make an arrest for a
19 misdemeanor committed in his presence and then may delegate to a law enforcement officer the act
20 of taking the suspect into custody." Arpin v. Santa Clara Valley Transportation Agency, 261 F.3d
21 912, 920 (9th Cir. 2001) (citing Padilla, 184 Cal. App. 3d at 1030). As noted by the Ninth Circuit,
22 the Padilla court emphasized that no "magic words" were required and that the fact of an arrest
23 could be "implied from the citizen's act of summoning an officer, reporting the offense, and pointing
24 out the suspect." Meyers v. Redwood City, 400 F.3d 765, 772 (9th Cir. 2005); see also Arpin, 261
   F.3d at 920 (citing Johanson v. Dept of Motor Vehicles, 36 Cal. App. 4th 1209, 1216–17(1995)).
25       Plaintiff contends that he is entitled to summary judgment on the grounds that his arrest was
26 unlawful because it was not a valid citizen's arrest—the basis for this assertion is that the arrest was
27 not actually "performed" by plaintiff's wife Sheila but by Officer Wyeth and that plaintiff's wife did
28 not intend to make an arrest. However, as discussed above, the fact that a peace officer performs the

8

actual arrest does not invalidate a citizen arrest—a citizen "may delegate" this function. Padilla, 184 Cal. App. 3d at 1030. Additionally, plaintiff's argument that the words used by Officer Wyeth—namely, "do you want to have him arrested"— were insufficient to effect an arrest, is unavailing. In order for the arrest to be valid, plaintiff contends, his wife (Sheila) had to have asserted that "*she* was arresting [him]." Atkins, Dep. at 127:17–128:7. However, this precise argument has been rejected by California courts. See, e.g., Johanson 36 Cal. App. 4th at 1217 (where the court noted that no "magic words" were required, but rather the relevant inquiry was into the "substance" of the actions taken); Arpin, 261 F.3d at 920.

In the present action, although Sheila Atkins now contends that she did not authorize a citizens arrest, it is evident from the surrounding circumstances that a finding of a valid arrest is proper. Sheila and Stephanie, having observed Steven Atkins commit the misdemeanor offense of driving under the influence, notified a peace officer and when asked if they would like to have him arrested, they responded in the affirmative. Given these facts, a valid citizens arrest occurred. This is so even if Sheila had not intended to effect a citizens arrest. See Padilla (finding citizens arrest valid even though citizen did not intend to arrest the individual). Plaintiff's assertions do not support a finding that he is entitled to summary judgment. Defendants, on the other hand, are entitled to summary judgment as a matter of law as to the validity of the citizens arrest.

Consequently, as this court has determined that both the warrantless entry and the citizens arrest are lawful and valid, plaintiff has suffered no constitutional injury and thus he has no basis upon which to advance a section 1983 claim against Officer Wyeth.[4]

III.   Plaintiff's Malicious Prosecution Claims

Defendant City of Alameda seeks summary adjudication that plaintiff cannot sustain a claim against the City of Alameda for allegedly engaging in malicious prosecution. Plaintiff asserts that the City of Alameda and the APD engaged in malicious prosecution because they issued a criminal complaint that was signed by Officer Al Coker as opposed to one signed by his wife Sheila Atkins. Pursuant to section 740 of the California Penal Code, "all misdemeanors and infractions must be prosecuted by written complaint under oath subscribed by the complainant. Such complaint may be verified on information and belief." Cal. Penal Code § 740. Although Officer Cofer concedes that he was not the "complainant" in this case, plaintiff cites to no authority in support of his contention that the "complainant" must, for purposes of section 740, be the individual who effects a citizens

arrest. Further, as defendants note, plaintiff provides no support for why, if such a requirement is breached, it would rise to the level of a constitutional injury. In any event, the court need not reach this issue. As the APD and Officer Coker are not parties to this action, plaintiff may only advance these claims against the City of Alameda. As discussed below, however, the City of Alameda is entitled to qualified immunity. Thus, defendants are entitled to summary judgment with respect to plaintiff's malicious prosecution claims.

IV.     City of Alameda is Entitled to Summary Judgment

For the same reasons articulated in the granting of summary judgment with respect to claims against Officer Wyeth, plaintiff has no basis upon which to sue the City of Alameda for the warrantless entry or the citizens arrest. "If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point." City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986).

The only avenue plaintiff has for holding the City of Alameda liable is if he can prove (1) that Officer Wyeth or any other officer or employee of the City violated his constitutional rights; and (2) that the officer's or employee's action was pursuant to an official custom or policy. Having failed to establish prong one of this inquiry, plaintiff does not open the door to prong two. In his second amended complaint plaintiff alleges that the fact that officers in the Alameda Police Department were poorly trained and supervised led to the infliction of plaintiff's injuries. Second Amended Complaint at 8:2–14. However, the Supreme Court has held that "a local government may not be sued under [section] 1983 for an injury inflicted solely by its employees or agents." Monell v. Department of Social Services, 436 U.S. 658, 694 (1978); see also McMillian v. Monroe County, 520 U.S. 781, 783 (1997). "Instead," the Supreme Court noted, a municipal entity may be liable under section 1983 only where the individual employee is executing official "policy or custom." Id.; see also Brass v. County of Los Angeles, 328 F.3d 1192, 1198 (9th Cir. 2003). Plaintiff has presented no evidence to suggest that his putative injuries were "inflicted" by anyone—or anything—other than Officer Wyeth (and in the case of his malicious prosecution claims, Officer Al Cofer). Id. Indeed, as discussed above, plaintiff fails on prong one for he has not even suffered a constitutional injury.

Even if plaintiff had been able to demonstrate a constitutional violation, it is of note that he has offered no evidence of an official policy or pattern of practice by the City of Alameda that gave rise to any deprivation of his constitutional rights.  Id.  Plaintiff merely asserts that the department did not reprimand Officer Wyeth—an action which implies a ratification of the officer's actions. However, this assertion is also offered without a shred of evidentiary support.[5]  Similarly, with respect to his malicious prosecution claims, plaintiff offers no evidence to support a finding of an official policy.  Plaintiff has not met his burden to demonstrate that there are any genuine issues of fact, see Gasaway, 26 F.3d at 960, and thus defendants are entitled to summary judgment as a matter of law.

CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is GRANTED. Plaintiff's motion for summary judgment is DENIED.

IT IS SO ORDERED.

Date:    June 7, 2006

_____
MARILYN HALL PATEL
District Judge
United States District Court
Northern District of California

11

## ENDNOTES

1. Unless otherwise noted, all facts in this section have been culled from the Joint Statement of Undisputed Facts ("JSUF").

2. Plaintiff disputes the amount of alcohol that he consumed. However this is not a material fact relevant to the current motions. It is undisputed that plaintiff was intoxicated after consuming a significant amount of alcohol and prescription drugs.

3. Even though she signed a citizen arrest form, Sheila Atkins now contends that she did not "make a citizen's arrest that night" and that Officer Wyeth's assertion that he explained to her what constituted a "citizens arrest" is untrue. Sheila Atkins Dec. ¶¶ 3, 7. Sheila Atkins also asserts that after Officer Wyeth took her husband outside of the house, (Wyeth) re-entered the house without her consent and she cooperated so that he would leave. Sheila asserts, inter alia, that she was under duress and had consumed several glasses of wine and thus her recorded conversation with Officer Wyeth as well as her citizens arrest statement are unreliable. Notably, Sheila claims that "[she] purposefully miss-spelled [her] name to Officer Wyeth so at a later date [she] could show that [she] was under duress." Id. ¶ 4. This contention (found in Sheila's declaration) that her citizens arrest statement was induced and that it was not her intention to effect a citizens arrest is inconsistent with the evidence in the record—specifically her deposition testimony and her statements on the Micro Cassette Recording—and ultimately irrelevant to the question of whether a valid citizens arrest occurred. See section II *infra*. Finally, a deponent cannot create a dispute of fact by saying one thing in her deposition and then contradicting it in a declaration. See Scamihorn v. General Truck Drivers, 282 F.3d 1078, 1086 (9th Cir. 2002) (citing Kennedy v. Allied Mut. Ins. Co., 952 F.2d 262, 266 (9th Cir. 1991)). Mrs. Atkins was under oath and subject to cross-examination at her deposition. This, together with her spontaneous, unrehearsed statements at the time of the incident, far outweighs her subsequent self-serving declaration.

4. Plaintiff's false imprisonment claim is predicated upon a finding that his arrest was improper. Thus, given that the citizens arrest was valid and lawful, plaintiff's false imprisonment claim must also fail.

5. In his untimely reply to defendant's opposition brief, plaintiff argues that another factor supporting a finding that there was ratification of the Officer's conduct is the instruction by Officer Wyeth's supervisor that Wyeth return to the Atkins home and obtain further evidence. However, as discussed *supra*, in the absence of a constitutional injury, the court need not reach this issue.